IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ROSEMARY ADAMS AND RICHARD MURAO, <br>     Plaintiffs, <br><br> v. <br><br> B&B SECURITY CONSULTANTS, INC., <br>     Defendant. | CIVIL ACTION <br><br> NO. 06-4573 |

**Memorandum and Order**

YOHN, J.                                                                                                                February ___, 2008

      Plaintiffs Rosemary Adams and Richard Murao filed this action against B&B Security Consultants, Inc. ("B&B") alleging discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* B&B now moves for summary judgment.[1] For the following reasons, I will deny B&B's motion.

**I.**      **Factual and Procedural Background**[2]

      B&B employed security guards who provided security services in, among other locations, Foot Locker stores in Philadelphia. B&B's president was Willie Borden, who is African

---

[1] Plaintiffs have not moved for summary judgment. In their response to B&B's summary judgment motion, they twice refer to "plaintiff[s'] motion for summary judgment." (Pls.' Resp. to Def.'s Mot. Summ. J. 2, 18.) These references do not turn their responsive brief into a motion

[2] When a court evaluates a motion for summary judgment, "[t]he evidence of the non-movant is to be believed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Furthermore, "all justifiable inferences are to be drawn in [the nonmovant's] favor." *Id.* Here, plaintiffs are the nonmovants, and so for purposes of this motion I assume their version of the events, supplemented by the uncontested facts, is true.

American.  (Willie Borden Decl. ¶ 2, Dec. 31, 2007.)  In August 2003, B&B hired Adams, a white female, and Murao, an Asian American male, to work as security officers on the Foot Locker account.  Jose Luciano, who oversaw B&B's Philadelphia operations, hired and supervised plaintiffs.  (Borden Decl. ¶ 5; Rosemary Adams Dep. 62:10-11, Nov. 30, 2007; Richard Murao Dep. 73:10-11, Nov. 28, 2007.)  In Philadelphia, B&B worked in association with another security firm, Black Knights, because B&B had not yet secured the necessary business licenses.  (Borden Decl. ¶ 6.)  Juan Clark worked for Black Knights in Philadelphia. (*Id.* ¶ 11.)

Foot Locker permitted only "legitimate law enforcement officers as defined by Foot Locker" to act as security guards in its stores.  (Pls.' Resp. Ex. D.)  B&B in Philadelphia experienced significant problems relating to Foot Locker's requirement that security guards in its stores possess certain qualifications.[3]  (Borden Decl. ¶ 7; Willie Borden Dep. 43:9-11, 54:1-11, Feb. 2, 2007.)  For that reason, Borden fired Luciano in early December 2003 (Borden Decl. ¶ 9), and asked Clark to manage B&B's Philadelphia employees until Luciano's position could be filled.  (Borden Dep. at 43:19-44:2.)

Thereafter, according to Borden, Borden asked Clark to contact all Philadelphia B&B employees to advise them that if they wished to continue employment with B&B, they must attend a meeting at a Philadelphia hotel on or about December 13, 2003 ("the December 13

---

[3] The facts underlying the dispute between B&B and Foot Locker arising from these problems are not entirely clear from the record before me.  Essentially, however, it appears that although B&B employees had obtained weapons permits from the Commonwealth of Pennsylvania, they did not meet Foot Locker's more stringent qualifications required of security guards.  What those qualifications were and what qualifications B&B employees had are not clear, but knowledge of the qualifications is not necessary for the disposition of this motion.

meeting"). (Borden Decl. ¶11.) Only three B&B employees attended the meeting, all of whom are African American. (Adams Dep. 117:3-6; Borden Dep. 51:16-52:5; Def.'s Mem. in Supp. Summ. J. Exs. E, F.) B&B knew at the time of the December 13 meeting that there had been a communication problem regarding the meeting. Borden testified, "When we got to the meeting and there was only these three guys there and him and myself, then we assumed that something must have happened in terms of communication." (*See* Borden Dep. 51:16-19.) The Equal Employment Opportunity Commission ("EEOC"), relying on witness interviews not in the record in this case, found that Borden himself instructed the three African American B&B employees to attend the December 13 meeting.[4] (Pls.' Resp. Ex. B, at 1-2.)

Plaintiffs learned of the December 13 meeting only while attending a separate meeting, organized by Luciano, during which Luciano called Clark, who explained that he was meeting with Borden and three B&B employees. (Adams Dep. 115:20-116:15.) Plaintiffs then understood themselves to have been "pulled off" the Foot Locker job. (*Id.* at 114:11-115:2.) The three African American B&B employees who attended the December 13 meeting continued to work in Foot Locker stores. (Borden Dep. 53:9-13.)

Within a few days after the December 13 meeting, plaintiffs and other B&B employees who had not attended that meeting drove to B&B's headquarters in Washington, D.C. to meet with B&B's management and express their concerns about the continuation of their jobs.

---

[4] EEOC determinations are relevant, admissible evidence in Title VII cases, although they may be excluded pursuant to Federal Rule of Evidence 403 if unduly prejudicial. *See El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 248 n.19 (3d Cir. 2007) (citing *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1344-45 (3d Cir. 2002)). B&B has not argued that the EEOC determination in this case is unduly prejudicial; neither has it argued that "the sources of information or other circumstances indicate a lack of trustworthiness." *See* Fed. R. Evid. 803(8)(c); *Coleman*, 306 F.3d at 1342-43. Therefore, I will consider it in deciding this motion for summary judgment.

(Borden Dep. 57:3-58:1; Adams Dep. 123:20-124:20; Murao Dep. 49:6-11.) Borden was unavailable, but the employees spoke with Ronson Britt, who worked with Borden. (Borden Dep. 57:9-16; Adams Dep. 126:9-4; Murao Dep. 49:17-20.) Britt said he did not know why the employees had been "pulled off" the Foot Locker accounts and that he would be back in touch with the employees. He additionally said that the employees were still on the B&B payroll, as far as he was concerned. (Adams Dep. 128:1-7; Murao Dep. 49:21-23; *see also* Def.'s Mem. Ex. F.)

After the Washington, D.C. trip, the employees waited for Britt to call them, and Adams called B&B and left messages over the course of three days. (Adams Dep. 129:3-14; Def.'s Mem. Ex. F.) According to Borden, after the meeting between the employees and Britt, he told Britt to make sure the employees knew to contact Clark because "there's no way I can now step back into this because I've agreed with Juan Clark that he's going to manage it. So if they're going to work, they're going to have to go back through him." (Borden Dep. 57:22-58:5.) However, plaintiffs never heard from anyone at B&B. (Adams Dep. 129:24-130:1; Murao Dep. 64:4-65:11; Def.'s Mem. Ex. F.)

At some point after the trip to Washington, D.C., Clark's secretary contacted plaintiffs and informed them that they could come and pick up their final paychecks. When plaintiffs arrived to pick up the checks, they were told they were not "on the list" to work for B&B and received their checks. (Adams Dep. 129:24-132:21; Murao Dep. 50:24-52:1.)

Adams timely filed a charge of race discrimination with the EEOC. (*See* Pls.' Resp. Ex. B, at 1.) The EEOC found:

> Evidence of record supports Charging Party's allegation that h[er] removal from h[er] Security Officer position by Respondent was because of h[er] race. . . . The evidence secured during the investigation clearly shows that Charging Party's race was a factor

>considered by the Respondent when it failed to contact her regarding the meeting at the Hyatt Hotel, which led to the continued employment of Black security officers who had also been laid off.

(*Id.* at 2.)  According to uncontested allegations in plaintiffs' Complaint, the EEOC could not reach a negotiated settlement with the parties with respect to damages, and therefore it issued a Notice of Right to Sue on July 19, 2006.  Plaintiffs timely filed this lawsuit on October 13, 2006.[5]  Defendant filed its motion for summary judgment on January 1, 2008.

## II.   Standard of Review

A motion for summary judgment will be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its initial burden, the nonmoving party must present "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986) (quoting Fed. R. Civ. P. 56(e)).  "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the

---

[5] I note that it is now uncontested that at least three African American employees were terminated at the same time plaintiffs were and that these three employees, like plaintiffs, were not rehired.  Furthermore, at least two non-African American employees were retained by B&B for a significant period after plaintiffs were terminated.  (*See* Def.'s Statement Undisputed Material Facts ¶¶ 14-15; Pls.' Counter-Statement Undisputed Facts ¶¶ 14-15.)  Finally, no one from B&B ever made comments to plaintiffs about their race.  (Adams Dep. 134:24-135:6, 135:17-20; Murao Dep. 100:21-23.)

disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Lebatt, Ltd.* 90 F.3d 737, 743 (3d Cir. 1996) (quoting *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995)). The nonmoving party must present concrete evidence supporting each essential element of its claim. *Celotex*, 477 U.S. at 322-23. In doing so, the nonmoving party must show more than "[t]he mere existence of a scintilla of evidence" for elements on which he bears the burden of production, *Anderson*, 477 U.S. at 252, and it may not rely merely on bare assertions, conclusory allegations, or suspicions, *see Fireman's Ins. Co. v. Du Fresne*, 676 F.2d 965, 969 (3d Cir. 1982). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

**III.   Discussion**

Title VII prohibits an employer from discrimination against any individual on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).[6] To prevail on their Title VII claim, plaintiffs must at a minimum present circumstantial evidence of discrimination using the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

---

[6] The full text of 42 U.S.C. § 2000e-2(a) provides:
   It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

(1973).[7]  Pursuant to *McDonnell Douglas*, a plaintiff must first provide evidence to support a prima facie case of discrimination by a preponderance of the evidence.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  If the plaintiff succeeds in establishing a prima facie case, the defendant then must "articulate some legitimate, nondiscriminatory reason for the employee's [termination]." *McDonnell Douglas*, 411 U.S. at 802.  If the defendant does so, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant were not its true reasons, but rather a pretext for discrimination.  *Id.* at 804.

A prima facie case of unlawful discrimination under Title VII is comprised generally of four elements:  (1) the plaintiff is a member of a protected class, (2) the plaintiff is qualified for the job, (3) the employer took an adverse action that affected the terms and conditions of the plaintiff's employment, and (4) the circumstances permit an inference of unlawful discrimination.  *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 411 (3d Cir. 1999).

B&B does not contest plaintiffs' prima facie case with respect to elements one, three, and four.  B&B has asserted, however, that "[t]here is a substantial question" regarding whether plaintiffs were qualified for the position because plaintiffs have admitted that their credentials did not satisfy Foot Locker's requirements for its security officers.  (Def.'s Mem. 7; *see also* Adams Dep. 110:22-24, 174:13-174:24; Murao Dep. 43:9-11, 69:6-70:17.)  Assuming plaintiffs did not meet Foot Locker's requirements, the record before me shows that other B&B employees were similarly unqualified (*see* Pls.' Resp. Ex. D), and that Borden considered plaintiffs to be qualified to work for B&B (*see* Borden Dep. 68:4-13; 101:6-11.)  As B&B has raised no other

---

[7] Where no direct evidence of discrimination exists, courts use the burden-shifting scheme set forth in *McDonnell Douglas* to assess a plaintiff's circumstantial evidence of discrimination.  Plaintiffs in this case do not present direct evidence of discrimination.

issues with respect to the prima facie case, and I conclude plaintiffs have made out a prima facie case for purposes of this motion.[8]

After determining that a plaintiff has established a prima facie case of racial discrimination, the court must decide whether the defendant has articulated a legitimate and nondiscriminatory reason for the plaintiff's termination. The burden on the defendant is one of production; a defendant must introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision. The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (internal citation omitted) (citing *St. Mary's Honor Ctr.*, 509 U.S. at 507; *Burdine*, 450 U.S. at 253). The burden is "relatively light." *Id.*

B&B asserts that plaintiffs were terminated because (1) having been informed of a mandatory meeting of security guards, they failed to attend, and (2) they failed to advise Clark that they wanted to resume work. (Def.'s Mem. 7-8.) If true, this explanation for B&B's termination of plaintiffs and its decision not to rehire them would permit the conclusion that there was a nondiscriminatory reason for B&B's decision. *See, e.g.*, *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, 1196 (8th Cir. 2006) (finding the failure to rehire plaintiff was based, in part, on the legitimate nondiscriminatory reason that he "did not attend the pre-season meeting and did not contact [defendant] for a laborer position until after those jobs

---

[8] This court notes that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

8

had been filled"). In light of this proffered legitimate, nondiscriminatory reason for B&B's decision, plaintiffs have lost the presumption of discrimination established by the prima facie case. *See Burdine*, 450 U.S. at 255.

The burden thus shifts back to the plaintiffs. "[T]o defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. In meeting this burden, however, plaintiffs "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* Instead, the burden is a "difficult" one, which—for each legitimate, nondiscriminatory reason proffered by the defendant—requires the plaintiff to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 765 (internal alterations, quotations, and citations omitted).

Plaintiffs argue that B&B's proffered reasons for terminating and not rehiring them are pretextual. With respect to the first proffered reason—that plaintiffs failed to attend a mandatory meeting of security guards of which they were informed—plaintiffs have testified that they were not informed of the meeting. (Adams Dep. 115:20-116:15; Murao Dep. 62:15-63:15.) Borden

9

himself testified that he did not know whether plaintiffs had been invited to the meeting. He testified that Clark was responsible for inviting employees to the meeting, that Borden was not involved in inviting employees to the meeting, and that Borden left to Clark the decision which employees to invite to the meeting.[9] (Borden Dep. 44:3-10, 46:13-15.) Borden was not sure that Clark invited all the employees. (*Id.* at 51:1-15.) Since there is no evidence that plaintiffs were actually invited, a reasonable jury could believe plaintiffs' testimony that they were not invited, and disbelieve this legitimate, nondiscriminatory reason proffered by B&B. Taking plaintiffs' version of the events as true, as I must in deciding B&B's motion for summary judgment, a reasonable jury could find that B&B's proffered legitimate, nondiscriminatory reason for terminating plaintiffs is unworthy of credence.

     B&B's second proffered legitimate, nondiscriminatory reason for plaintiffs' termination is that plaintiffs failed to advise Clark that they wanted to resume work. As with the first reason, B&B has put forth no evidence that plaintiffs were actually told by anyone at B&B to contact Clark. Adams testified that in Washington, D.C. she and the other employees were told by Britt that he would find out why they were not working and would contact them;[10] she also testified that she called B&B's headquarters in Washington, D.C. three times after the meeting there, but that her calls were not returned. (Adams Dep. 128:2-130:1.) According to Murao, Britt said that as far as he knew, the employees still had their jobs; he further said Britt knew nothing about Black Knights assuming responsibility for B&B's Philadelphia operations. (Murao Dep. 63:20-64:1.) Neither testified to being told to contact Clark; therefore, the reasonable inference is that,

---

[9] Neither side presented an affidavit from or deposition of Clark.

[10] Neither side presented an affidavit from or deposition of Britt.

according to their version of the events, they were not told.  Were a jury to believe plaintiffs' version, the jury could reasonably disbelieve B&B's articulated legitimate reason.  Therefore, again taking plaintiffs' version of the events as true, B&B's proffered legitimate, nondiscriminatory reason for terminating plaintiffs is unworthy of credence.

**IV.  Conclusion**

Genuine issues of material fact exist with respect to whether plaintiffs were invited to the December 13 meeting, whether B&B specifically invited only African American employees to the December 13 meeting, and whether plaintiffs were told to contact Clark to be scheduled for Foot Locker shifts.  Taking plaintiffs' versions of the facts as true, a reasonable jury could find that B&B's proffered legitimate, nondiscriminatory reasons for plaintiffs' termination were unworthy of credence.  Although plaintiffs' case may be quite weak, the evidence currently of record, if believed by a jury, could result in a finding for them.  Therefore, I will deny B&B's motion for summary judgment.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ROSEMARY ADAMS AND RICHARD MURAO, | : : : | |
| PlaintiffS, | : : | CIVIL ACTION |
| v. | : : | NO. 06-4573 |
| B&B SECURITY CONSULTANTS, INC., Defendant. | : : | |

## Order

YOHN, J.

AND NOW, this _____ day of February 2008, upon consideration of the summary judgment motion of defendant, B&B Security Consultants, Inc. (Docket No. 18), plaintiffs' response thereto, and defendant's reply, IT IS HEREBY ORDERED that defendant's motion for summary judgment is DENIED.

Trial is scheduled for June 16, 2008 at 10:00 a.m.

_____s/ William H. Yohn Jr._____
William H. Yohn Jr., Judge